Filed 7/18/24  Yeh v. Oxy-Health CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CHING WEN YEH, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> OXY-HEALTH, LLC, et al., <br><br> Defendants and Appellants. | B330565 <br><br> (Los Angeles County Super. Ct. No. 22NWCV01107) |

APPEAL from an order of the Superior Court of the County of Los Angeles, Lee W. Tsao, Judge.  Affirmed.

Justin J. Shrenger and Susan Rodriguez, for Defendants and Appellants.

Law Office of Herb Fox, Herb Fox, and Anthony A. Liberatore, for Plaintiff and Respondent.

# I.   INTRODUCTION

Defendants[1] appeal from the denial of their special motion to strike pursuant to Code of Civil Procedure section 425.16 (section 425.16), the anti-SLAPP statute.[2]  We affirm.

# II.   BACKGROUND

## A.   *Complaint*

On October 25, 2022, plaintiff Ching Wen Yeh filed a complaint against defendants asserting two employment-based causes of action for (1) wrongful termination in violation of public policy; and (2) retaliation in violation of Labor Code section 1102.5.  In support of his first cause of action, he alleged as follows:  From approximately 2000, Oxy-Health employed plaintiff to sell "hyperbaric oxygen chambers throughout the world."  To maximize his sales performance, Oxy-Health allowed plaintiff to advertise the oxygen chambers on his own website.

---

[1]   Defendants are Oxy-Health, LLC (Oxy-Health) and Samir Patel (Patel).  Subsequent to the filing of the notice of appeal, defendants' counsel filed a notice that Patel passed away on July 2, 2023, and defendants' amended opening brief indicates that an application for their counsel to represent the estate of Patel is pending.

[2]   "A 'SLAPP' is a '"strategic lawsuit against public participation"' [citation], and special motions to strike under section 425.16 are commonly referred to as '[a]nti-SLAPP motions' [citation]."  (*Bonni v. St. John Health System* (2021) 11 Cal.5th 995, 1007, fn. 1 (*Bonni*).)

In August 2017, plaintiff, as a nonparty witness, provided testimony and assistance in a sexual harassment lawsuit brought by one of his former coworkers against defendants. In that action, plaintiff testified that Patel "would slap the backsides of female employees in the office, would call female employees sexually charged names and refer to their body parts on the public intercom . . . ."

Plaintiff also complained to Patel about Patel's conduct toward female employees which plaintiff characterized as "inappropriate, offensive, and unlawful." As president of Oxy-Health, Patel had authority over plaintiff, as well as "authority to investigate, discover, or correct violations."

On January 23, 2018, Oxy-Health terminated plaintiff's employment. On March 19, 2019, Patel called plaintiff and told him that he had been terminated "'[b]ecause [he] hurt [Patel] by signing that affidavit'" from the former coworker's lawsuit and that Patel was planning "to ruin [p]laintiff financially and . . . to harass [p]laintiff's wife because he had the money and lawyers to do it." Prior to the phone call, plaintiff had no knowledge that his testimony against Patel was the reason behind his termination.

Defendants had a policy of retaliating against employees who "provided testimony or assisted in pending actions that reflected unfavorably upon defendants". Plaintiff was terminated because he "testif[ied] in and assist[ed] in the prosecution of the sexual harassment matter against defendants."

Following plaintiff's termination, defendants "pursued a campaign to ruin him financially and emotionally. Defendants engaged in unlawful conduct that: forced [p]laintiff to spend in excess of a hundred thousand dollars to maintain his website; prevented [p]laintiff from being able to earn a living; and caused

3

others not to do business with [p]laintiff." Defendants attempted to "squeeze [plaintiff] out of the hyperbaric oxygen chamber market" and "to prevent [p]laintiff from working for competitors or himself . . . ."

In support of his second cause of action for violation of Labor Code section 1102.5, subdivisions (a) through (c), plaintiff incorporated and repeated the allegations of the first cause of action and concluded that defendants terminated him for "his reporting of unlawful activities to [Patel], for refusing to participate in an activity (suppression of reporting of sexual harassment) that [p]laintiff reasonably thought would result in a violation of state sexual harassment laws, and for assisting and testifying in favor of [his former coworker] in her sexual harassment lawsuit against defendants."

B.    *Anti-SLAPP Motion*

In response to the complaint, defendants filed a special motion to strike pursuant to section 425.16.  The motion sought to "excise [from the complaint] the language 'forced [p]laintiff to spend in excess of a hundred thousand dollars to maintain his website' set forth in the [c]omplaint at [paragraph] 32 [(the challenged language)] . . . ."

Defendants explained that they filed an action in federal court against plaintiff (federal action)[3] for the alleged breach of an agreement that authorized plaintiff to sell Oxy-Health's products "only in Brazil and possibly other South American

---

[3]    The federal action was entitled *Oxy-Health, LLC v. H2 Enterprises, Inc.* (C.D. Cal. Nov. 15, 2021, CV 18-4066-MWF (SSx)) 2021 WL 6750804.

4

nations." According to defendants, they subsequently dismissed the federal action, not because it lacked merit, but because they believed plaintiff did not have the resources to satisfy any judgment they may have obtained. Defendants also asserted that plaintiff did not—as alleged in the challenged language—expend any funds to establish or maintain his website; those expenses were paid by defendants. Instead, the $100,000 amount in the challenged language was for attorney fees incurred by plaintiff in defending the federal action. Based on those facts, defendants argued that the challenged language must be stricken as an improper effort by plaintiff "to slip the allegations in the back door by saying that he spent more than [ ]$100,000 'on the website.'"

In support of the motion, defendants submitted a declaration from Patel detailing his former friendly relationship with plaintiff and the facts that gave rise to the federal action. Patel's declaration also asserted that plaintiff "did not pay anything for the website that is mentioned in [the challenged language]" and that Patel chose to dismiss the federal action despite its merits because Patel "did not believe that [p]laintiff had sufficient funds to satisfy any judgment" against him. (Emphasis omitted.)

Plaintiff opposed the motion, arguing that defendants failed to show that the causes of action in his complaint qualified as protected activity under section 425.16. In support of his opposition, plaintiff submitted his own declaration providing his account of the circumstances that led to his alleged wrongful termination, including a quote from an attached recording of Patel's March 2019 telephone call with plaintiff in which Patel threatened to "com[e] after" plaintiff and his wife because

5

plaintiff "came after [Patel] with that damn affidavit." Plaintiff attached as exhibits copies of invoices and receipts which purportedly showed that he paid expenses related to his website himself.

Following a hearing, the trial court denied the motion, concluding that defendants did not satisfy their burden of showing that "[p]laintiff's action falls within the class of suits subject to the special motion to strike." The court determined that defendants' motion to strike predominantly targeted the damages alleged in plaintiff's complaint, that it was "well established that remedies sought are not subject to a special motion to strike," and that, for "this reason alone, [d]efendants' motion to strike is without merit." The court also explained that "[d]efendants' retaliation and/or wrongful termination of [p]laintiff is not protected activity for purposes of the anti-SLAPP statute."

Defendants timely appealed.[4]

## III.  DISCUSSION

A.  *Anti-SLAPP Procedure*

"'[The anti-SLAPP] statute authorizes a special motion to strike a claim "arising from any act . . . in furtherance of [the plaintiff's] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)' (*Wilson* [*v. Cable News Network, Inc.* (2019)] 7 Cal.5th [871,] 883–884.) [¶] Litigation of

---

[4]    Plaintiff's request to strike a portion of the reply brief is denied.

6

an anti-SLAPP motion involves a two-step process. First, 'the moving defendant bears the burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.' (*Park* [*v. Board of Trustees of California State University* (2017)] 2 Cal.5th [1057,] 1061 [(*Park*)].) Second, for each claim that does arise from protected activity, the plaintiff must show the claim has 'at least "minimal merit."' (*Ibid.*) If the plaintiff cannot make this showing, the court will strike the claim." (*Bonni, supra*, 11 Cal.5th at p. 1009.)

"A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citations.] Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' [Citations.] '[T]he mere fact that an action was filed after protected activity took place does not mean the action arose from that activity for the purposes of the anti-SLAPP statute.' [Citations.] Instead, the focus is on determining what 'the defendant's activity [is] that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' [Citation.] 'The only means specified in section 425.16 by which a moving defendant can satisfy the ["arising from"] requirement is to demonstrate that *the defendant's conduct by which plaintiff claims to have been injured* falls within one of the four categories described in subdivision (e) . . . .' [Citation.] In short, in ruling on an anti-SLAPP motion, courts should consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability." (*Park, supra,* 2 Cal.5th at pp. 1062–1063.)

The four categories of protected activity covered by the anti-SLAPP statute are: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest. (§ 425.16, subd. (e).)

"We review de novo the grant or denial of an anti-SLAPP motion." (*Park, supra*, 2 Cal.5th at p. 1067.)

B.     *Analysis*

Defendants do not explain how the activity alleged in the challenged language, namely, *plaintiff's* payment of funds to maintain his website (which defendants assert was actually a payment for attorney fees), constitutes protected conduct by *defendants*. Nor do they explain how the action alleged in the challenged language supplies the elements of the employment causes of action. Indeed, by characterizing the challenged language as "another unnamed cause of action for attorney's fees incurred in defending a lawsuit," defendants impliedly concede that the challenged language does not supply the basis for liability on either of the expressly alleged causes of action.

8

Instead, defendants argue that "[t]he 'gravamen' of [the challenged language], and in fact the ***only*** import thereof, was an attempt to impose liability upon [defendants] for protected litigation conduct."[5] The "gravamen approach" to the protected activity prong—whereby "a court [does] not examine the underlying acts individually, but instead . . . identif[ies] the 'gravamen' or 'principal thrust' of the cause of action and consider[s] only whether that gravamen arises from protected activity[,]"—has been rejected by our Supreme Court. (*Bonni, supra*, 11 Cal.5th at pp. 1010–1011.) Thus, to the extent defendants are basing their challenge on appeal on that flawed analysis, it fails at the outset.

Here, the only acts alleged in the complaint upon which liability could be premised are acts related to plaintiff's employment with Oxy-Health—his testimony in support of a coworker's sexual harassment claim, his complaints to Patel about sexual harassment in the workplace, and defendants' termination of his employment as an alleged result of his testimony and complaints. No other actionable conduct by either party is alleged and there is no mention of the federal action or any allegation suggesting that Oxy-Health's conduct in prosecuting that lawsuit forms the basis for a claim in this case. The challenged language regarding plaintiff's payment of $100,000 relates only to the amount of damages sought, and does not supply the elements supporting liability for either of the causes of action alleged in plaintiff's complaint. (*Marlin v. Aimco*

---

[5] Plaintiff confirmed in his respondent's brief that he did not "seek[ ] attorney's fees incurred in the federal action" (emphasis omitted) and added during oral argument that he would not seek to recover damages sustained as a result of the federal action.

9

*Venezia, LLC* (2007) 154 Cal.App.4th 154, 162 ["[a] 'cause of action' must be distinguished from the remedy sought"]; *Guessous v. Chrome Hearts, LLC* (2009) 179 Cal.App.4th 1177, 1187 ["section 425.16 applies only to a cause of action, not to a *remedy*"].)  Moreover, even if the allegation arose from protected activity, at most it "provide[s] context, without supporting a claim for recovery, [and therefore] cannot be stricken under the anti-SLAPP statute."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 394; *Pech v. Doniger* (2022) 75 Cal.App.5th 443, 459.)  Defendants therefore did not meet their first-prong burden under the anti-SLAPP statute and the trial court did not err in denying their motion to strike.

## IV.   DISPOSITION

The order denying the section 425.16 special motion to strike is affirmed.  Plaintiff is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM, Acting P. J.


We concur:



MOOR, J.



DAVIS, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.